UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER J. HORTON,

       Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

No.  2:19-cv-1923-KJN

ORDER ON PARTIES' CROSS MOTIONS
FOR SUMMARY JUDGMENT

(ECF Nos. 13, 17)

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act.[1]  In his summary judgment motion, plaintiff contends the Administrative Law Judge erred in weighing certain medical evidence and formulating his residual functional capacity, rejecting his subjective-symptom testimony, and rejecting the lay testimony in the record.  The Commissioner opposed, and filed a cross–motion for summary judgment.

The court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

///

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes.  (ECF Nos. 5, 14, 23.)

1    **I.        BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**[2]

2            On November 1, 2015, plaintiff applied for Disability Insurance Benefits, alleging an

3    onset date of September 22, 2014.  (Administrative Transcript ("AT") 179-80.)  Plaintiff stated he

4    was disabled due to a head injury, concussion, severe migraines, photo sensitivity, limited

5    cognitive endurance/short term memory/multitasking/sustained attention/mental focus, and poor

6    noise tolerance.  (AT 107.)  Plaintiff's application was denied initially and again upon

7    reconsideration.  (AT 71-87, 89-105.)  Plaintiff, aided by an attorney, sought review of those

8    denials with an Administrative Law Judge ("ALJ").  (AT 118-19.)  The ALJ held a hearing on

9    January 18, 2018, wherein plaintiff and his wife testified about plaintiff's conditions, and a

10   Vocational Expert ("VE") testified about plaintiff's ability to work.  (AT 30-70.)

11           On August 24, 2018, the ALJ issued a decision determining that plaintiff was not disabled

12   from his onset date onward.  (AT 10-24.)  As an initial matter, the ALJ determined that plaintiff

13   met the insured status requirements through December of 2019.  (AT 12.)  At step one, the ALJ

14   concluded plaintiff had not engaged in substantial gainful activity since his alleged onset date of

15   September 22, 2014.  (Id.)  At step two, the ALJ determined plaintiff had the following severe

16   impairments:  traumatic brain injury and migraine headaches.  (Id.)  At step three, the ALJ

---

17   [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
18   Security program.  42 U.S.C. §§ 401 et seq.  Disability is defined, in part, as an "inability to
     engage in any substantial gainful activity" due to "a medically determinable physical or mental
19   impairment. . . ."  42 U.S.C. § 423(d)(1)(a).  A parallel five-step sequential evaluation governs
     eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S.
20   137, 140-42 (1987).  The following summarizes the sequential evaluation:
21           **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the
             claimant is found not disabled.  If not, proceed to step two.
22           **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step
             three.  If not, then a finding of not disabled is appropriate.
23           **Step three**: Does the claimant's impairment or combination of impairments meet
             or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
24           claimant is automatically determined disabled.  If not, proceed to step four.
25           **Step four**: Is the claimant capable of performing past relevant work?  If so, the
             claimant is not disabled.  If not, proceed to step five.
26           **Step five**: Does the claimant have the residual functional capacity to perform any
             other work?  If so, the claimant is not disabled. If not, the claimant is disabled.
27   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in
     the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The
28   Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   determined plaintiff's impairments did not meet or medically equal the severity of an impairment

2   listed in Appendix 1.  (Id.) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  In doing so, the

3   ALJ noted that plaintiff had mild-to-moderate limitations in the four mental impairments

4   categories listed in paragraph B, listing 12.02.  (AT 13.)

5        The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform a

6   full range of work at all exertional levels, with certain non-exertional limitations:  that plaintiff

7   should "never climb ladders, ropes, or scaffolds," "never work at unprotected heights, hazards, or

8   dangerous machinery," "never work outdoors or in the direct sunlight," and could only perform

9   "simple unskilled work activity."  (AT 14.)  In fashioning this RFC, the ALJ stated he considered

10  those of plaintiff's symptoms that were consistent with the medical evidence and opinions of the

11  medical professionals.  (Id.)  The ALJ rejected the more-severe aspects of plaintiff's subjective

12  symptom testimony, as well as the corroborating testimony of plaintiff's wife and friends.  (AT

13  19.)  The ALJ concluded that while plaintiff was unable to perform any past relevant work, there

14  were jobs existing in the national economy that he could perform.  (Id.)  Thus, the Commissioner

15  determined plaintiff was not disabled.  (AT 24.)

16       Plaintiff then filed this action requesting judicial review of the Commissioner's final

17  decision; the parties filed cross–motions for summary judgment.  (ECF Nos. 1, 13, 17, 22.)

18  **II.**   **LEGAL STANDARD**

19       The court reviews the agency's decision de novo, and should reverse "only if the ALJ's

20  decision was not supported by substantial evidence in the record as a whole or if the ALJ applied

21  the wrong legal standard."  Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).  Substantial

22  evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence

23  as a reasonable mind might accept as adequate to support a conclusion."  Edlund v. Massanari,

24  253 F.3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for determining credibility,

25  resolving conflicts in medical testimony, and resolving ambiguities."  Id.  The court will uphold

26  the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation."

27  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, the court may not reverse

28  the ALJ's decision on account of harmless error.  Buck, 869 F.3d at 1048.

1  **III.    ISSUES PRESENTED**

2     Plaintiff argues the ALJ erred in failing to explain the RFC and failing to properly

3  evaluate the evidence thereunder, and erred in rejecting all lay testimony based on "inaccurate,

4  illegitimate reasons."  (ECF No. 13.)  Plaintiff seeks a remand for benefits.  (Id. at 18.)

5     The Commissioner disagrees, arguing the ALJ properly determined the RFC and

6  articulated legally sufficient reasons for the weight accorded to the medical opinions, and

7  appropriately considered plaintiff's subjective symptoms and the testimony of plaintiff's wife and

8  friends.  Thus, the Commissioner contends the decision as a whole is supported by substantial

9  evidence, which should result in affirmance.  (Id.)

10  **IV.    DISCUSSION**

11    **A.  The ALJ's interpretation of the medical evidence and opinions, and plaintiff's RFC.**

12       Legal Standard

13     Generally speaking, the ALJ is required to consider a host of factors in deciding the

14  weight given to any medical opinion, including the examining relationship, the length of the

15  treatment relationship and frequency of examination, the nature and extent of the treatment

16  relationship, supportability, consistency with the record, specialization, and any other factors

17  deemed relevant.  20 C.F.R. § 404.1527(c)(1)-(6).

18     In order to evaluate whether an ALJ properly rejected a medical opinion, in addition to

19  considering its source, the court considers whether: (1) contradictory opinions are in the record;

20  and (2) clinical findings support the opinions.  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995).

21  To reject the uncontradicted opinion of a treating or examining doctor, the ALJ must provide

22  "clear and convincing reasons that are supported by substantial evidence."  Ryan v. Comm'r, 528

23  F.3d 1194, 1198 (9th Cir. 2008).  Conversely, a contradicted opinion may be rejected for

24  "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  An ALJ provides specific and

25  legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting

26  clinical evidence, stating [an] interpretation thereof, and making findings."  Magallanes v.

27  Bowen, 881 F.2d 747, 751 (9th Cir. 2011).

28  ///

1          Analysis

2          Here, the undersigned finds the ALJ provided the appropriate analysis in weighing the

3    medical evidence and opinions, resolving conflicts between those opinions, and formulating

4    plaintiff's RFC.  The ALJ relied primarily on the records and opinions from plaintiff's physician

5    of record, Dr. Stoody (generated in the months just after plaintiff's 2014 motorcycle accident), the

6    follow-up records and findings from Nurse Practitioner Reddy, and the findings and opinions of

7    the four state-agency physicians who reviewed plaintiff's case at the initial and reconsideration

8    stages (two reviewing plaintiff's physical impairments and two for his mental impairments).  (AT

9    16-21.)  There exist in the record contrary opinions of certain medical personnel, including

10   records from plaintiff's speech and language pathologist Ms. Tielman and a medical

11   questionnaire completed by Dr. Dorsett in 2017.  (See AT 19.)  Thus, under Magallanes, the ALJ

12   was required to set out a thorough summary of the facts and conflicting evidence—which he did

13   (see AT 16-19), and interpret this evidence so findings could be made—which he also did (AT

14   19-22).

15          Plaintiff is mainly concerned with the rejection of Tielman and Dorsett's more-limiting

16   opinions in the record.  In assigning little weight to Tielman's conclusion that plaintiff could not

17   retain work in a competitive setting, the ALJ found that much of her report was based on

18   plaintiff's subjective symptoms (the more severe of which the ALJ also rejected).  (See AT 22.)

19   Plaintiff finds support in case law stating that mental limitations will depend in part on a

20   plaintiff's subjective symptom testimony, and the court recognizes this argument.  See Buck, 869

21   F.3d at 1049.  However, the ALJ also took into account Tielman's specialty as a speech

22   pathologist—and not a psychiatrist or psychologist—and appropriately weighed her opinion on

23   plaintiff's limitations under 20 C.F.R. § 404.1527.  See, e.g., Noe v. Apfel, 6 F. App'x 587 (9th

24   Cir. 2001) (claimant's mental health counselor, who was not a licensed physician or psychologist,

25   was an "other source," rather than an "acceptable medical source," whose opinion was entitled to

26   less weight than opinions from acceptable medical sources in proceeding on application for Social

27   Security disability benefits).  As for Dorsett, the ALJ found the objective medical evidence did

28   not support his finding that plaintiff would be absent 5 or more days.  Though not explicitly

spelled out in the short paragraph rejecting Dorsett's opinion (AT 22), the court understands that the ALJ weighted the other physicians and medical evidence more greatly than Dorsett's, as evidenced by the extensive analysis provided in the pages prior.  Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("'Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").  Plaintiff's attempts here appear to be a request for the court to reweigh this medical evidence, which the court cannot do.  Tommasetti, 533 F.3d at 1038 (the court will uphold the ALJ's conclusion where the evidence is susceptible to more than one rational interpretation).

Additionally, plaintiff contends the RFC does not match any specific opinion as expressed by any of the medical sources in the record.  Plaintiff notes the ALJ assigned great weight to the state-agency physicians who opined that plaintiff could do light work, but that the ALJ assigned an RFC stating plaintiff could work at all exertional levels (and the VE only testified to jobs at the medium level).  Further, plaintiff notes the mix-and-match style of the non-exertional limitations.  However, it is the ALJ's job to formulate the RFC, and need not adopt any physician's opinion verbatim.  20 C.F.R. § 416.946(c).  Finally, plaintiff argues the ALJ failed to discuss why plaintiff could perform under this RFC on a sustained basis.  However, the court finds that while the decision could have been more clear in its language, the ALJ's extensive summary of the record, discussion of the medical opinions, and findings regarding those opinions' consistency with the "bulk record" satisfies the ALJ's duty.  Molina, 674 F.3d at 1121.

For these reasons, the court rejects plaintiff's arguments concerning the ALJ's evaluation of the evidence and formulation of the RFC, as expressed in Sections A and B of his initial motion.  (ECF No. 13 at 6-14.)

**B.  Plaintiff's Subjective-Symptom Testimony**

Legal Standard

In evaluating a claimant's report of his or her symptoms, the Ninth Circuit has proffered the following two-step analysis:

> First, the ALJ must determine whether the claimant has presented objective
> medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  A claimant's statements of subjective symptoms alone is insufficient grounds to establish disability.  20 C.F.R § 404.1529(a).  If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose.  See Treichler v. Comm'r of SSA, 775 F.3d 1090, 1106 (9th Cir. 2014).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony."  Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony."  Treichler, 775 F.3d at 1102.  Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, inconsistencies between a claimant's testimony and their conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record.  See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  A lack of corroborating, objective medical evidence alone is insufficient grounds to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider.  20 C.F.R § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

///

///

1    <u>Analysis</u>

2        Here, the ALJ first summarized plaintiff's subjective symptom testimony, as well as the

3    testimony regarding his daily activities, as provided at the January 2018 hearing.  (AT 15.)  After

4    reviewing the objective medical evidence (AT 15-19), the ALJ began his analysis with the oft-

5    repeated statement that while plaintiff's testimony generally aligned with the medical evidence,

6    his statements "concerning the intensity, persistence and limiting effects of these symptoms are

7    not entirely consistent with the medical evidence and other evidence in the record."  (AT 19.)

8    The ALJ noted plaintiff's statement that he could not work due to the symptoms arising out of his

9    mild traumatic brain injury and migraine headaches, as well as "ongoing significant cognitive

10   symptoms" associated therewith.  (<u>Id.</u>)  The ALJ then stated four reasons why plaintiff's

11   testimony was rejected.  First, the ALJ noted the medical evidence did not support the severity of

12   plaintiff's allegations.  (AT 19.)  Second, the ALJ noted minimal treatment.  (<u>Id.</u>)  Third, the ALJ

13   noted some of plaintiff's daily activities, including his ability to drive, care for his daughter,

14   maintain his personal care, and work part time as a volunteer for a piano store, all belied his claim

15   of limited cognitive functioning.  (AT 20.)  Fourth, the ALJ noted plaintiff's symptoms were

16   manageable with rest and medication, the latter of which came with no extreme side effects.  (<u>Id.</u>)

17       The undersigned finds the ALJ met his duty to resolve plaintiff's subjective symptom

18   testimony under Ninth Circuit precedent.  Most convincingly, the ALJ's relied on plaintiff's

19   minimal treatment and manageability with medication to support his decision to discount

20   plaintiff's testimony that he could not work because of his impairments.  <u>See</u> <u>Tommasetti</u>, 533

21   F.3d at 1039-40 (that claimant "did not seek an aggressive treatment plan" and underwent

22   conservative treatment undermines allegations of disabling impairment); <u>Carmickle v. Comm'r</u>,

23   533 F.3d 1155, 1161 (9th Cir. 2008) (noting that though a lack of medical evidence "cannot form

24   the sole basis for discounting pain testimony, it is a factor that the ALJ can consider . . . ."); <u>see,</u>

25   <u>generally,</u> <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (1999) (rejecting plaintiff's claim of pain

26   approaching the highest level when plaintiff received minimal, conservative treatment).

27   ///

28   ///

1    **C.  Lay Testimony**

2        Legal Standard

3        "[C]ompetent lay witness testimony cannot be disregarded without comment."  Molina,

4    674 F.3d at 1114 (internal quotation and citation omitted).  "[I]n order to discount competent lay

5    witness testimony, the ALJ must give reasons that are germane to each witness."  Id.  "Further,

6    the reasons 'germane to each witness' must be specific."  Bruce v. Astrue, 557 F.3d 1113, 1115

7    (9th Cir. 2009).

8        Contradictory evidence in the record is a germane reason for rejecting lay testimony.  See

9    Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  Additionally, when the ALJ provides clear

10   and convincing reasons for discounting the claimant's subjective complaints, and third-party

11   witness testimony is similar to claimant's subjective complaints, the ALJ also provides germane

12   reasons for rejecting the third-party witness testimony.  See Valentine v. Comm'r, 574 F.3d 685,

13   694 (9th Cir. 2009) (the ALJ provided germane reasons for rejecting third-party witness

14   testimony similar to claimant's subjective testimony, when the ALJ provided clear and

15   convincing reasons for rejecting claimant's subjective testimony).

16       Analysis

17       Here, the ALJ summarized plaintiff's wife's testimony, as well as the statements

18   submitted by his friends.  (AT 15-16.)  The ALJ noted the instances where these reports were

19   inconsistent with plaintiff's testimony of his daily activities and medical evidence.  (AT 21.)  The

20   ALJ concluded that:

21           Ultimately, the opinions expressed by the claimant's friends and
             family regarding the claimant's limitations are given little weight
22           because they are inconsistent with the medical opinions of record,
             the objective findings, and the record as a whole. The claimant's
23           friends and family are not medical experts, and many of the
             limitations suggested by them are a reflection of the claimant's
24           subjective complaints, which are not fully consistent for the reasons
             noted above.
25

26   (Id.)  At a minimum, the court finds sufficient the ALJ's rationale that the aligning testimony of

27   these third-party witnesses' should be rejected for the same reasons plaintiff's testimony.  See

28   Valentine, 574 F.3d at 694.

1    **V.    <u>CONCLUSION</u>**

2        In sum, the Court finds that the ALJ's decision was free from prejudicial legal error and

3    supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY

4    ORDERED that:

5        1.    Plaintiff's motion for summary judgment (ECF No. 13) is DENIED;

6        2.    The Commissioner's motion for summary judgment (ECF No. 17) is GRANTED;

7        3.    The final decision of the Commissioner is AFFIRMED; and

8        4.    The Clerk of Court is directed to CLOSE this case.

9    Dated:  November 19, 2020

10

11                                          _____
                                            KENDALL J. NEWMAN
      hort.1923                             UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28